**Jorge Byron ALEGRIA,**
**Plaintiff–Appellant,**

v.

**UNITED STATES of America,**
**Defendant–Appellee.**

No. 90–6049.

United States Court of Appeals,
Eleventh Circuit.

Oct. 30, 1991.

Stanley P. Kaplan, Miami, Fla., for plaintiff-appellant.

Dexter W. Lehtinen, U.S. Atty., Miami, Fla., Gary R. Allen, Chief, Murray S. Horwitz, Brian C. Griffin, Pamela C. Berry, Appellate Section, Tax Div. Dept. of Justice, Washington, D.C., for defendant-appellee.

Before FAY and JOHNSON, Circuit Judges, and MERHIGE *, Senior District Judge.

## PER CURIAM:

In October, 1990, appellant Jorge Byron Alegria, a non-resident alien, filed a complaint in the United States District Court for the Southern District of Florida seeking review of a jeopardy assessment made against him pursuant to § 7429(b) of the Internal Revenue Code (the Code). Soon thereafter the United States filed a motion to dismiss the case for lack of venue. After a hearing on the matter, the district court dismissed the case for lack of venue pursuant to 28 U.S.C. § 1402(a)(1) and § 7429(e) of the Code. Alegria subsequently filed this timely appeal.

The jeopardy assessment that is the subject of this action stemmed from the seizure on October 6, 1989, of $1,019,026 in cash from one Carlos Javier Marlunda, by special agents of the Drug Enforcement Agency (DEA). In a subsequent forfeiture action against these funds, Alegria claimed $1,000,000 of the seized funds. The evidence established that Alegria is a citizen of Nicaragua, although at the time of the seizure he had been living outside that country for nine years. He further testified that he is an active participant in several anti-Sandinista organizations and is the treasurer of a group known as the Movimiento Revolucionario Autentico (MRA), which collects donations from around the world for humanitarian aid to the anti-Sandinistas.

In his capacity as treasurer, Alegria stated that he was instructed to arrange for the transport of $1,000,000 of MRA donations from Colombia to the United States. The plan was to convert the money into gold and then transport it to the United States by private plane, where it would then be sold at a considerable profit.

According to Alegria, the owner of the plane insisted that the MRA deposit $1,000,000 with him to insure the safe return of the aircraft. The MRA complied with this request. Unfortunately for them, the owner of the plane was involved in drug trafficking and the $1,000,000 in addition to other money was seized by the DEA.

As a consequence of the evidence before it, the jury in the forfeiture action, which preceded the assessment, determined that the one million dollars in issue was not drug related and the district judge ordered the United States Marshal to return the money, plus interest, to Alegria. However, before the Marshal could do so, the Internal Revenue Service (IRS) levied upon $410,023.31 of the money pursuant to a jeopardy assessment under 26 U.S.C. § 6331(a).[1] Alegria filed a petition for ad-

---

* Honorable Robert R. Merhige, Jr., Senior U.S. District Judge for the Eastern District of Virginia, sitting by designation.

1. Section 6331(a) of the Code states that

[i]f any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary to collect such tax ... by levy upon all property and rights to property ...

ministrative review with the Secretary pursuant to § 7429(a)(2).[2] In the absence of any response to his petition, he filed the instant litigation.

The United States filed a motion to dismiss the action based on lack of venue. A hearing was held and the district court thereafter entered an Order dismissing the action on the grounds that Alegria was a nonresident alien and therefore unable to establish venue in the United States district courts for expedited review of the IRS action pursuant to 28 U.S.C. § 1402(a)(1) and 26 U.S.C. § 7429 (see discussion below).

Before this Court, Alegria contends that he is entitled to establish venue pursuant to 28 U.S.C. §§ 1402(c) and 1346(e). He further maintains that the district court's interpretation of the law would deny him procedural due process and equal protection of the laws.

We deem it important to point out what is not in dispute. First, the parties agree that jurisdiction existed in the Southern District of Florida, pursuant to either 26 U.S.C. § 7429(b)[3] or 28 U.S.C. § 1346(e).[4] Second, they agree with the district court's determination that Alegria is a nonresident alien. The two issues on which they do not agree are (1) whether the district court applied the correct statutes in determining that nonresident aliens cannot create venue in this type of proceeding, and (2) whether the district court's refusal to confer venue

violated Alegria's right to procedural due process and equal protection.

The questions posed, being matters of law, are subject to *de novo* review by this Court. *See Young v. Commissioner,* 926 F.2d 1083 (11th Cir.1991).

■ The dispute between the parties results in part from an inconsistency in the federal statutes relating to this type of proceeding. There are actually two appropriate methods of determining the proper venue in actions brought pursuant to 26 U.S.C. § 7429(b). The first is by means of 28 U.S.C. § 1402(c), which states that civil actions against the United States brought pursuant to 28 U.S.C. § 1346(e)

> may be prosecuted only in the judicial district where the property is situated at the time of the levy, or if no levy is made, in the judicial district in which the event occurred which gave rise to the cause of action.

As noted, 28 U.S.C. § 1346(e) creates jurisdiction in the district courts for all cases brought under § 7429(b) of the Code. Applying this scheme, the Southern District of Florida is the proper venue for the instant action because that is where the assessment and levy against the money were made.

However, there is an alternative route which the district court in the present case chose to apply. 26 U.S.C. § 7429(e) itself

---

belonging to such person or on which there is a lien provided in this chapter for the payment of such tax.... If the Secretary makes a finding that the collection of such tax is in jeopardy, notice and demand for immediate payment of such tax may be made by the Secretary and, upon failure or refusal to pay such tax, collection thereof by levy shall be lawful without regard to the 10–day period provided in this section.

The IRS made a jeopardy assessment of income taxes against Alegria pursuant to Section 6861 of the Code, which permits the IRS to immediately assess a deficiency if it believes that the assessment or collection of the deficiency will be jeopardized by delay. The IRS specifically based this assessment on the fact that (1) Alegria asserted rights to a large sum of money; (2) he had failed to file a tax return for 1989; (3) he had substantial contacts outside of the United States; (4) he had no documentation of how he obtained the $1,000,000; (5) he had given the

money to a convicted drug dealer; (6) he had no documentation for his story; and (7) he expected to received a large profit from the sale of the gold.

2. Section 7429(a) of the Code provides for administrative review of a jeopardy assessment by the IRS upon application by the taxpayer. If the taxpayer does not receive a response within sixteen days thereafter, he is authorized by section 7429(b) to file a civil action in district court.

3. Section 7429(b) of the Code confers upon the district courts exclusive jurisdiction over all civil actions brought pursuant to that section for review of IRS jeopardy assessments.

4. This section confers upon the district courts original jurisdiction of all civil actions brought against the United States pursuant to Section 7429 of the Code.

contains a venue provision which states that

[a] civil action in a district court under subsection (b) shall be commenced only in the judicial district described in section 1402(a)(1) or (2) of Title 28, United States Code.

Section 1402(a)(1), which applies to individuals, provides that civil actions may be prosecuted only "in the judicial district where the plaintiff resides."

As may be expected, Alegria maintains that venue is properly established by the provisions of § 1402(c), whereas the government contends that § 1402(a) applies. In the only case addressing this issue of which the Court is aware, the U.S. District Court for the District of Columbia concluded that it was bound by the venue provisions of § 1402(a), which create venue in the district in which the plaintiff resides. *Aruba Bonaire Curacao Trust Co., Ltd. v. U.S.*, 43 AFTR 2d 79-797, 1979 WL 1315 (D.D.C.1979). The *Aruba* court premised its decision on the "established maxim of statutory construction that 'a specific provision prevails over a more general one.'" *Id., citing Castaneda–Gonzalez v. INS*, 564 F.2d 417, 423 (D.C.Cir.1977).[5] The court accordingly found that § 7429(e), which specifically refers to actions under § 7429(b), should prevail over the broader sweep of 28 U.S.C. § 1402(c). *Id.*

The *Aruba* decision finds additional support in the temporal relationship between the statutes in question. 28 U.S.C. § 1402(c)—which was rejected by the court—was enacted in 1966 as the venue provision for 28 U.S.C. § 1346(e), which provided district courts with jurisdiction over suits brought under § 7429(b). Section 7429, on which the present suit is based, was not then in existence. In 1976, as part of the Tax Reform Act, Congress enacted Section 7429, which both created a

cause of action and simultaneously included a specific provision for venue in whatever district was appropriate under 28 U.S.C. § 1402(a)(1) (for individuals) or (a)(2) (for corporations). *See* 26 U.S.C. § 7429(e). In connection with this enactment, Congress thereafter amended 28 U.S.C. § 1346(e) to create jurisdiction in the district courts for actions arising under § 7429.[6] The venue provision already linked to § 1346(e), 28 U.S.C. § 1402(c), was never changed in any way to reflect the change in § 1346(e) and bring it into concordance with the venue provision in § 7429 itself.

In our view, this sequence of events suggests that Congress never intended the venue provision of 28 U.S.C. § 1402(c) to apply to actions under § 7429. It is highly unlikely that by amending § 1346(e) to create jurisdiction over cases involving the more recently enacted § 7429, Congress intended to negate § 7429's own specific venue provision.

■ Assuming therefore that the government is correct in asserting that the proper venue provision for this action is § 1402(a)(1), the next question is whether nonresident aliens can establish venue under this statute. As noted herein, § 1402(a)(1)[7] creates venue "in the judicial district where the plaintiff resides." It is generally accepted that an alien, for purposes of establishing venue, is presumed by law not to reside in any judicial district of the United States regardless of where he or she actually lives. *Williams v. United States*, 704 F.2d 1222, 1225 (11th Cir. 1983), *citing Galveston, Harrisburg & San Antonio Railway Co. v. Gonzales*, 151 U.S. 496, 506–07, 14 S.Ct. 401, 404–05, 38 L.Ed. 248 (1894). Nevertheless, the government conceded in *Williams*—as it has in other cases—that *resident* aliens may attack a jeopardy assessment without any venue bar. *See Id.* at 1224.

---

5. The *Aruba* case is slightly different from the present one in that it involved a corporation, not an individual. However, with regard to that court's analysis of the conflicting venue provisions, this is a distinction without significance.

6. This amendment would appear to have been unnecessary since Section 7429 itself has a juris-

dictional provision granting exclusive jurisdiction to the United States district courts in cases arising under the Section.

7. Section 7429 refers to § 1402(a)(1) and (a)(2), but subsection (a)(2) is only applicable to corporations.

Even assuming that § 1402(a)(1) was intended to exclude nonresident aliens, as the government maintains, Alegria has alternately argued that the statute violates his Fifth Amendment rights to due process and equal protection. This issue was specifically reserved by this Circuit in *Williams, supra,* which involved facts strikingly similar to those at hand. In *Williams,* the taxpayer, an alien, sought to bring an action pursuant to § 7429(b) of the Code to challenge a jeopardy assessment made by the IRS. The district court dismissed the action for lack of venue under 28 U.S.C. § 1402(a)(1). The Court noted the "possible constitutional implications" of denying to nonresident aliens "the statutory benefits afforded all other taxpayers." *Id.* at 1226–27. It did not rule on these constitutional concerns, but instead remanded the case to the district court for a factual determination as to whether the taxpayer was a resident or nonresident alien. *Id.* at 1227.

The substance of this issue was subsequently addressed in several cases by the U.S. District Court for the Southern District of Florida. For reasons satisfactory to each, several district judges came to different conclusions. For example, in *Bigio v. United States,* 710 F.Supp. 790 (S.D.Fla.1988), the court found that the distinction between aliens and citizens for venue purposes was a rational one on the grounds that "[a]liens are more likely to have contacts outside the country and opportunities to remove assets from the United States and escape taxation." *Id.* at 792, *citing Botero v. United States,* 560 F.Supp. 616 (S.D.Fla.1983). It went on to conclude that nonresident aliens were not deprived of due process or equal protection of the laws because they could always seek a remedy in the Tax Court or the Court of Claims. *Id.*

The Court notes that the *Bigio* court did not refer to *Garzon v. United States,* 605 F.Supp. 738 (S.D.Fla.1985), which held that nonresident aliens do have venue to bring § 7429(b) actions, and that to hold otherwise would constitute a violation of due process and equal protection. In *Garzon,* the court began by noting that the jeopardy and termination assessment provisions were enacted to help prevent evasion of federal taxes through secretion of assets and transfers of property beyond the reach of federal law and federal agencies. *Id.* at 743, *citing Botero v. United States,* 560 F.Supp. 616 (S.D.Fla.1983) (case involving refund of taxes). Correspondingly, § 7429(b) was enacted to protect individuals by providing for an "expedited" means of judicial review of jeopardy assessments made by the IRS. *Id., citing* S.Rep. No. 938, (Part I), 94th Cong. 2d Sess. 364 (1976), *reprinted in* 1976 U.S.Code Cong. & Admin.News (90 Stat.) 2897, 3439, 3793.

The court then concluded that there is "no rational basis for finding that United States citizens and resident aliens may seek review in federal district court but nonresident aliens must seek a remedy only in the Tax Court and the Court of Claims." *Id.* at 745. The court found support for this conclusion in *Plyler v. Doe,* 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982), in which the U.S. Supreme Court held that a Texas statute, which denied undocumented school age children the free public education that it provided to children who are citizens of the United States or legally admitted aliens, violated the Equal Protection Clause of the Fourteenth Amendment.

Not surprisingly, the United States now relies on many of the arguments suggested by *Bigio* and ignores *Garzon.* For example, with regard to due process, the government contends that nonresident aliens receive adequate due process protection from expedited *administrative* review of jeopardy assessments, pursuant to § 7429(a). Further, the government argues that in denying Alegria access to this expedited judicial review, they have interfered with no permanent property rights. They point out that the only function of the § 7429(b) hearing is to determine whether the jeopardy assessment was reasonable and appropriate. The district court does *not* determine the proper amount of the taxpayer's actual tax liability. Thus, if the district court determines that the jeopardy assessment was reasonable, the taxpayer then has the option either to petition the Tax

Court for a determination of his tax liability, or file suit for a refund in the district court or Claims Court after paying the tax in full and filing an administrative claim for refund.

Because Alegria still has the option to file actions in either Tax or Claims Court, the government maintains that he is not being permanently deprived of his property without a hearing. The only tangible loss he will suffer, so the argument goes, is the right to have more immediate post-seizure review. In response to this, Alegria points out that the estimated time between filing and a decision by the Tax Court is two years. He suggests—not unpersuasively— that two years is too long to wait for judicial review of the government's actions.

Additionally, the government suggests that it would be a violation of sovereign immunity to allow nonresident aliens to bring suit under § 7429 without the express consent of Congress. They also argue that Alegria cannot claim that he has been deprived of *his* property since the money really belongs to the MRA. Given the fact that the IRS has taxed Alegria personally on the basis of this money, the government's argument in this regard is, in the Court's most charitable view, disingenuous.

Finally, with regard to the equal protection claim, the government suggests that the distinction between nonresident aliens and all other people is rational because—in their words—

> a nonresident alien, served with notice of jeopardy assessment, is far more likely to remove himself, and his possession, from the reach of the tax collector, than a United States resident, whose ties are likely to be of a more permanent nature. Accordingly, restricting judicial review under Section 7429 to residents of the United States cannot be considered a denial of equal protection.

Such a contention hardly qualifies as a rational basis. Indeed, it escapes this Court how the existence of an expedited hearing under § 7429 would encourage a nonresident alien to flee the country with his assets. If an individual intends to flee upon notice of assessment, the availability of an expedited review of the assessment can hardly represent an incentive to flee. Simply stated, we find no rational basis for treating aliens and citizens differently for venue purposes in the context with which we are concerned in this cause.

REVERSED and REMANDED for further proceedings consistent with this opinion.

FAY, Circuit Judge, concurring in part, dissenting in part:

I join in that portion of the court's opinion holding that the proper venue provision for this action is § 1402(a)(1). However, I must respectfully dissent from the court's conclusion that Congress cannot constitutionally provide different procedures for judicial review of jeopardy assessments to non-resident aliens than it provides United States citizens and resident aliens. I would affirm the district court's dismissal of this action.

First, I am not convinced that *non-resident* aliens have constitutionally protected due process and equal protection rights in this context. The United States Supreme Court recently noted that "aliens receive constitutional protections when they have come within the territory of the United States and developed substantial connections with this country." *United States v. Verdugo–Urquidez,* 494 U.S. 259, 110 S.Ct. 1056, 1064, 108 L.Ed.2d 222 (1990) (citing, among other cases, *Plyler v. Doe,* 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982)); *cf. Jean v. Nelson,* 727 F.2d 957, 968 (11th Cir.1984) (noting in immigration context that "[w]hile resident aliens, regardless of their legal status, are ... entitled to at least limited due process rights," for nonresident aliens " 'the decisions of executive or administrative officers, acting within powers expressly conferred by congress, are due process of law.' " (quoting *Nishimura Ekiu v. United States,* 142 U.S. 651, 660, 12 S.Ct. 336, 338, 35 L.Ed. 1146 (1892)), *aff'd on other grounds,* 472 U.S. 846, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985). If non-resident aliens do not enjoy such protections, any discussion about whether the

procedures established by Congress comport with due process and equal protection is purely academic.

Assuming, however, that non-resident aliens do have these rights, I believe the constitutional requirements have been met in this case. First, there is no denial of due process by not providing expedited review of a jeopardy assessment *in district court.* Anyone subject to a jeopardy assessment may seek relief through administrative remedies or file an action in the Tax or Claims Court. *Cf. Commissioner v. Shapiro,* 424 U.S. 614, 630 n. 12, 96 S.Ct. 1062, 1072 n. 12, 47 L.Ed.2d 278 (1976) (stating that while due process requires "a prompt post-seizure inquiry" into the basis for the assessment, "[n]othing we hold today ... would prevent the Government from providing an administrative or other forum outside the Art. III judicial system for whatever preliminary inquiry is to be made as to the basis for a jeopardy assessment and levy"). Moreover, legislation violates equal protection only if the classifications established by Congress are not rationally related to a legitimate government interest. *See, e.g., In re Wood,* 866 F.2d 1367, 1370 (11th Cir.1989). "Under the 'rational relationship' test, a court reviewing the constitutionality of a classification only may strike down the classification if the classification is without *any* reasonable justification." *Id.* The jeopardy assessment provisions at issue in this case were designed to prevent tax evasion by the transfer of property beyond the reach of federal authorities. In my opinion, Congress could reasonably believe that non-resident aliens are in a better position to escape taxation in this manner, and should be treated differently from citizens or resident aliens. *See Bigio v. United States,* 710 F.Supp. 790, 791–92 (S.D.Fla.1988).

There are two other very troubling aspects of this case. First, it appears to me that this matter is moot. The appellant filed a suit in Tax Court and we have been advised that a settlement has been reached resolving totally the tax consequences of this jeopardy assessment and the government apparently stands ready to release the excess over and above the taxes due.

In these circumstances, I would decline to issue what is essentially an advisory opinion and dismiss this appeal as moot.

Lastly, it seems to me extraordinary that the government apparently is about to make or has already made a payment of a substantial sum of money to the appellant when he has never established that these funds are his or that he even has any claim to them. Appellant's brief suggests that these funds belong to an organization, the MRA, that was fighting the Sandanistas. The funds were seized from the possession of a third party allegedly engaged in illegal drug activity. Although a jury has determined that these funds were not drug related, no one has sufficiently explained why Alegria himself is entitled to receive them or why he has standing as to this case or the Tax Court matter.

I will always wonder about the government's actions if it gives the remaining one-half million dollars involved to a person who has failed to establish any interest or claim to it. I can only guess that there are political concerns involved about which the judicial branch knows nothing.