Gerd TOPSNIK, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civil Action No. 13–1776 (RBW)

United States District Court, District of Columbia.

Filed December 2, 2013

Michael Cavalier Durney, Law Offices of Michael C. Durney, Washington, DC, for Plaintiff.

Ari David Kunofsky, William Bradley Russell, Jr., U.S. Department of Justice, Washington, DC, for Defendant.

## *ORDER*

REGGIE B. WALTON, United States District Judge

The plaintiff, Gerd Topsnik, has filed this action against the United States seeking review under 26 U.S.C. § 7429 (2012) of a jeopardy assessment and levy imposed upon him by the Internal Revenue Service ("IRS"). Complaint ("Compl.") ¶ 1. Currently before the Court are the United States' Motion for Summary Determination ("Gov't's Mot.") and Gerd Topsnik['s] Motion for Summary Determination and Opposition to [the] United States' Motion for Summary Determination ("Pl.'s Mot."). Upon careful consideration of the parties' submissions,[1] and for the reasons stated below, the Court must grant the United States' motion and deny the plaintiff's motion.

## BACKGROUND

### A. Statutory Background

 "If the collection of income tax will be jeopardized by delay, the IRS is statutorily authorized to expedite collection by immediate levy, via a jeopardy assessment, upon a taxpayers' property." *Olbres v. IRS*, 837 F.Supp. 20, 21 (D.N.H. 1993) (citing, among others, 26 U.S.C. § 6861). "The effect of a jeopardy proceeding 'is to render these taxes immediately due and payable, so that the IRS can act to insure collection.'" *Varjabedian v. United States*, 339 F.Supp.2d 140, 144 (D.Mass.2004) (citation omitted). But "the jeopardy proceeding 'is of a summary nature and does not amount to a final determination of [the] plaintiff's correct tax liability.'" *Id.* (citation omitted).

 Under § 7429, a "taxpayer may bring a civil action against the United States" in "the district courts of the United States"[2] for review of the jeopardy assessment and levy, § 7429(b)(1), (2)(A), and "[w]ithin 20 days after a [§ 7429] proceeding is commenced . . . the court shall determine" two issues, *id.* § 7429(b)(3). First "the Court must determine whether [the] IRS demonstrated that [the] making

---

1. In addition to those submissions already identified, the Court considered the United States' Memorandum of Points and Authorities ("Gov't's Mem.") in rendering its decision.

2. It bears mentioning that the statute further specifies that venue is appropriate "only in the judicial district described in section 1402(a)(1) . . . of Title 28, United States Code," 26 U.S.C. § 7429(e), which in turn directs plaintiffs to file actions against the United States "in the judicial district where the plaintiff resides," 28 U.S.C. § 1402(a)(1). As the Court notes *infra*, the plaintiff is a nonresident alien, and thus he does not legally reside in any judicial district. *See, e.g., Alegria v. United States*, 945 F.2d 1523, 1526 (11th Cir.1991) ("It is generally accepted that an alien, for purposes of establishing venue, is presumed by law not to reside in any judicial district of the United States. . . ."). However, another member of this Court has noted that IRS policy guidelines indicate that "a jeopardy assessment challenge should be brought in the District of Columbia if [the plaintiff] lack[s] residency in the United States," *Lindholm v. United States*, 808 F.Supp. 3, 5 (D.D.C.1992), and additionally that "barring nonresident aliens from challenging jeopardy assessments pursuant to 26 U.S.C. § 7429 constitutes a deprivation of property without due process in violation of the Fifth Amendment," *id.* (citing *Alegria*, 945 F.2d at 1527–28). In any event, because nothing in the statute or its legislative history appear to characterize § 7429(e) as anything beyond a venue provision, *see* S.Rep. No. 94–938, at 364 (1976); H. Rep. 94–10612 (1976), and because "parties may normally consent to be sued in a court that would otherwise be an improper venue," *Texas Mun. Power Agency v. EPA*, 89 F.3d 858, 867 (D.C.Cir.1996), the United States has waived the issue by failing to raise it, *id.* (citing, among others, Fed. R.Civ.P. 12(h); *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 168, 60 S.Ct. 153, 84 L.Ed. 167 (1939)).

of the assessments [or levies] was reasonable." *Lyons v. United States*, CIV. No. 86–2452, 1988 WL 62836, at *1 (D.D.C. Feb. 1, 1988) (citing § 7429(g)(1)); *see also* § 7429(b)(3)(A)(i) (addressing assessments); *id.* § 7429(b)(3)(B) (addressing levies). Second, "[i]f the Court finds that the IRS meets this burden, the Court must then determine if the taxpayer has demonstrated that the amount assessed was not reasonable." *Lyons*, 1988 WL 62836, at *1 (citing § 7429(g)(2)); *see also* § 7429(b)(3)(A)(ii).

## B. United States–Germany Double Taxation Treaty

The Convention for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income and Capital and to Certain Other Taxes, U.S.-Ger. ("Double Taxation Treaty"), Aug. 29, 1989, T.I.A.S. 11082, *available at* http://www.irs.gov/pub/irs-trty/germany.pdf (last visited Dec. 1, 2013), "appl[ies] to persons who are residents of one or both" the United States and Germany. Double Taxation Treaty, art. 1. With certain exceptions not applicable in this case, taxes covered under the Double Taxation Treaty include all "federal income taxes imposed by the Internal Revenue Code." *Id.*, art. 2(1)(a). Article 23 of the Double Taxation Treaty provides that, "[i]n accordance with the provisions and subject to the limitations of the law of the United States . . ., the United States shall allow to a resident or citizen of the United States as a credit against the United States tax on income the income tax paid to the Federal Republic of Germany." *Id.*, art. 23(1)(a). Finally, article 26 provides that the "competent authorities" of the United States and Germany "shall exchange such information as is necessary for carrying out the provisions of [the Treaty] and of the domestic law of [the United States and Germany] concerning taxes covered by [the Treaty] . . . ." *Id.*, art. 26(1).

## C. Factual Background

The "[p]laintiff is [currently] a [nonresident] alien who resides in Germany." Compl. ¶ 3; *see also* Gov't's Mem. at 3. "He became a lawful resident of the United States (*i.e.*, a Green Card holder) in 1977," Gov't's Mem. at 3, and he surrendered his United States residency on November 20, 2010, *id.* at 5; Gov't's Mem., Exhibit ("Ex.") 103 (Abandonment of Permanent Resident Status) at 2; *see also* Gov't's Mem., Ex. 102 (2010 Tax Return of Gerd Topsnik ("2010 Tax Return")) at 5.

Until 2004, the plaintiff "was a stockholder in Gourmet Foods, Inc., a corporation incorporated under the laws of the State of California." Gov't's Mem. at 3; *see also* Compl. ¶ 3. "In 2004, [the plaintiff] sold his Gourmet Foods stocks," Gov't's Mem. at 3; Gov't's Mem., Ex. 102 (2010 Tax Return) at 4; Compl. ¶ 3, and "[a]s part of his compensation for that stock, he received installment payments over the next decade," including $510,000 in tax year 2010, "with a total net gain of $439,671," Gov't's Mem. at 3; Gov't's Mem., Ex. 102 (2010 Tax Return) at 4; Compl. ¶ 3. Although the plaintiff "asserted in his income tax return . . . for 2010 that the $439,671 gain should not be taxed by the United States based on the" Double Taxation Treaty, the return also indicated that the plaintiff "did not pay taxes on that gain in Germany." Gov't's Mem. at 3; Gov't's Mem., Ex. 102 (2010 Tax Return) at 5.

"By letter dated February 15, 2011," German authorities "received from the Government of the United States . . . a request for information pursuant to Article 26 of the" Double Taxation Treaty regarding the plaintiff. Gov't's Mem., Ex.

106 (German Authority's May 4, 2011 Response to United States Request for Information ("Response") at 7). German authorities responded on May 4, 2011, "explain[ing] that it was unclear from [their] records whether [the plaintiff] had a domicile or habitual residence in Germany" for tax years 2004 to 2009. Gov't's Mem. at 4; *see also* Gov't's Mem., Ex. 106 (Response) at 3, 7–8. German authorities further "indicated that Germany had not taxed [the plaintiff] on the $5 million installment sales payments based on his status as a non-resident of Germany." Gov't's Mem. at 4 (citing Gov't's Mem., Ex. 106 (Response) at 4).

On July 18, 2013, the IRS mailed a Notice of Jeopardy Assessment, Levy and Right of Review (the "Notice") to the plaintiff's attorney. Compl. ¶ 15; Gov't's Mem. at 6. According to the Notice, the IRS found that the plaintiff was "designing to conceal [his] property or transfer it, thereby tending to prejudice or render ineffective collection of income tax for" the 2010 taxyear. Gov't's Mem., Ex. 101 (Notice of Jeopardy Assessment, Levy and Right of Review ("Notice")) at 1. The Notice acknowledged that the plaintiff "claim[ed] to be a non-resident alien and a resident of Germany since 2000," but asserted that he "ha[d] not provided adequate proof of residency in Germany or any other country," *id.*, Ex. 101 (Notice) at 4, and had contrarily stated to the United States Customs and Immigration Service that his permanent residence was in the Philippines. *Id.* The Notice further stated that, "[f]or tax year 2010, [the plaintiff] did not report any capital gains [and had] claimed installment sale income was exempt by a Treaty," but the plaintiff "ha[d] not provided adequate documentation to support a Treaty provision which applies to exclude [his] U.S. source capital gain income from U.S. taxation." *Id.* Finally, the Notice stated that research indicated

that "in 2003, [the plaintiff] sold his residence in Hawaii and do[es] not own any other real estate in the U.S.," and that his "only remaining sources of income in the U.S[.], namely the installment sales proceeds from the sale of stocks, are mailed to an address in Canada." *Id.*

The IRS "levied the installment payments" on the same day that it sent the Notice, Gov't's Mem. at 6, and the plaintiff, after proceeding with administrative review, Compl. ¶¶ 15–25, filed this action on November 12, 2013, seeking judicial review. The government then filed its motion for summary determination, arguing that the assessment, levy, and the amount of the assessment were reasonable. In response, the plaintiff filed his motion for a summary determination that the assessment and levy were unreasonable.

## ANALYSIS

"Judicial review pursuant to 26 U.S.C. § 7429 is necessarily summary in nature and does not determine ultimate tax liability." *Lindholm v. United States*, 808 F.Supp. 1, 2 (D.D.C.1992) (citations omitted). The Court is not required to conduct an evidentiary hearing prior to making a determination, but rather may rely on affidavits or other written submissions filed by the parties. *See id.* (citations omitted); *Lyons*, 1988 WL 62836, at *1. The IRS has the burden of proof with respect to the reasonableness of making a jeopardy assessment and levy, while the burden of proof with respect to the reasonableness of the amount of a jeopardy assessment rests with the taxpayer. *See Boyd v. United States*, 724 F.Supp. 1036, 1038 (D.D.C.1989); *see also* § 7429(g).

For a jeopardy assessment to be reasonable, it must be "something more than 'not arbitrary and capricious' and something less than supported by 'sub-

stantial evidence.'" *Central De Gas De Chihuahua, S.A. v. United States,* 790 F.Supp. 1302, 1304 (W.D.Tex.1992) (citation omitted); *see also Selbe v. United States,* 899 F.Supp. 1524, 1525 (W.D.Va. 1995) (citation omitted). In conducting its analysis, the Court must "take into account not only information available to the [IRS] on the assessment date, but also any other information which bears on the issues before it." *Haskin v. United States,* 444 F.Supp. 299, 304 (C.D.Cal.1977) (citing S.Rep. No. 94–938, at 365 (1976)). The Court's determination is "final and conclusive and shall not be reviewed by any other court." § 7429(f).

## A. Whether the Jeopardy Assessment and Levy Were Reasonable

"A jeopardy assessment is reasonably taken against a taxpayer" when the IRS determines that one of the conditions listed in 26 C.F.R. § 1.6851–1(a)(1) applies to the taxpayer. *Lindholm v. United States,* 808 F.Supp. 3, 5 (D.D.C.1992). The conditions under § 1.6851–1(a)(1) include:

(i) The taxpayer is or appears to be designing quickly to depart from the United States or to conceal himself. . . .

(ii) The taxpayer is or appears to be designing quickly to place his . . . property beyond the reach of the Government either by removing it from the United States, by concealing it, by dissipating it, or by transferring it to other persons.

(iii) The taxpayer's financial solvency is or appears to be imperiled.

26 C.F.R. § 1.6851–1(a)(1). IRS regulations concerning jeopardy assessments incorporate § 1.6851–1(a)(1), which applies to termination assessments, and mandate

that the IRS "immediately" assess taxes where "collection is determined to be in jeopardy because at least one of the conditions described in [26 C.F.R.] § 1. 6851–1(a)(1)(i), (ii), or (iii) (relating to termination assessments) exists." 26 C.F.R. § 301.6861–1(a).

■ Here, the IRS was faced with conflicting information. First, the plaintiff surrendered his Green Card and United States residency and indicated that his intended residency was the Philippines. Gov't's Mem., Ex. 103 (Abandonment of Permanent Resident Status) at 2. At the same time, the plaintiff's 2010 tax return indicated that he "claim[ed] residence for tax purposes during the tax year" in Germany, Gov't's Mem., Ex. 102 (2010 Tax Return) at 5, but German authorities "explained that it was unclear from [their] records whether [the plaintiff] had a domicile or habitual residence in Germany . . . . [and] also indicated that Germany had not taxed [the plaintiff] on" the proceeds of his stock sale, Gov't's Mem. at 4 (citing Gov't's Mem., Ex. 106 (Response) at 3–4). Finally, the plaintiff "fail[ed] . . . to certify under penalty of perjury that 'he has met the requirements of this title for the 5 preceding taxable years or fail[ed] to submit such evidence of such compliance'" as he was required to do upon renouncing his United States residency. Gov't's Mem. at 10 (citation omitted); *see also* 26 U.S.C. § 877(a)(2)(C).[3] Because (1) the plaintiff had not paid taxes for the 2010 tax year on the installment payments received from his stock sale, (2) the plaintiff claimed two different countries of residence on various government forms that he filed during 2010, (3) German authorities indicated that the plaintiff had not paid taxes in Germany

---

**3.** Although no evidence is provided for the following assertion, the IRS states it also had information indicating installment payments

"were being sent to an intermediary at a Canadian address." Gov't's Mem. at 4 (citing Gov't's Mem., Ex. 101 (Notice) at 5).

on the installment payments, and (4) the plaintiff failed to make the necessary certifications concerning his compliance with the Internal Revenue Code, the Court finds that the IRS's conclusion that the plaintiff might be "designing quickly to place his . . . property beyond the reach of the Government either by removing it from the United States, by concealing it, by dissipating it, or by transferring it to other persons," § 1.6851–1(a)(1)(ii); Gov't's Mem., Ex. 101 (Notice) at 1, was reasonable. The Court thus finds that the assessment and subsequent levy were reasonable.

 Central to the plaintiff's argument that the assessment and levy were unreasonable is his argument that the United States District Court for the Central District of California's January 17, 2012 order in *Topsnik v. United States,* No. 2:11–cv–06958–JHN–MRW (C.D.Cal.), "granting [the] government's Motion To Dismiss[ ] constitutes a judicial determination that [the] [p]laintiff's status is that of a non-resident alien German resident for the year 2010."[4] Pl.'s Mot. at 2. This is incorrect. To be sure, it is true that under the "law-of-the-case" doctrine, " 'the *same* issue presented a second time in the *same case* in the *same court* should lead to the *same result.*' " *Sherley v. Sebelius,* 689 F.3d 776, 780–81 (D.C.Cir.2012) (quoting *LaShawn A. v. Barry,* 87 F.3d 1389, 1393 (D.C.Cir.1996) (original emphasis)). And the "doctrine reaches beyond the court that made the first decision. It applies just as strongly to coordinate courts." *LaShawn A.,* 87 F.3d at 1393 n. 3 (citing *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 816, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988)). However, the

Central District of California did not rule on whether the plaintiff was a German resident for the tax year of 2010. Rather, the court stated only that the "[p]laintiff here does not reside in any judicial district since he *currently* resides in Germany." Pl.'s Mot., Ex. 1 (Order, *Topsnik,* No. 2:11–cv–06958–JHN–MRW (C.D.Cal., Jan. 17, 2012), ECF No. 13) at 2 (emphasis added). The complaint in that case was filed in 2011, Complaint, *Topsnik,* No. 2:11–cv–06958–JHN–MRW (C.D.Cal., Aug. 23, 2011), ECF No. 1, and so the most that the Central District of California held was that the plaintiff was a resident of Germany in 2011 when he filed his complaint in that court or alternatively when that court issued its ruling on January 17, 2012. Accordingly, because the case before this Court concerns tax year 2010, the Central District of California's residency ruling is immaterial here.

The plaintiff also devotes an extensive portion of his motion for summary affirmance to the exhibits attached to the United States' motion to dismiss in *Topsnik v. United States,* No. 2:11–cv–06958–JHN–MRW (C.D.Cal.). *See* Pl.'s Mot. at 3–19. He argues principally that the United States conceded that he is a German resident, as stated in its motion to dismiss and as evidenced by the documents attached to that motion. *Id.* at 4–5. Regardless of what position the United States took in 2011 in *Topsnik v. United States,* No. 2:11–cv–06958–JHN–MRW (C.D.Cal.), as discussed above, it is apparent that the United States had evidence here that, even if the plaintiff was a resident of Germany for the 2010 tax year, he was also, until November 20, 2010, a resident of the United States. Furthermore, he had not paid

---

4. Although the plaintiff's motion indicates that the Central District of California's order was issued on December 7, 2011, that was in fact the date on which the United States filed

its motion to dismiss in *Gerd Topsnik v. United States,* No. 2:11–cv–06958–JHN–MRW (C.D. Cal., filed Aug. 23, 2011).

taxes on the proceeds received from his stock sale to either German or United States authorities for that tax year. The plaintiff's failure to pay taxes for the 2010 tax year on the installment payments, in conjunction with all the other evidence available at the time of the assessment and levy, renders the IRS's assessment and levy reasonable.

## B. Whether the Amount of the Jeopardy Assessment Was Reasonable

 The amount of a jeopardy assessment "is presumed to be reasonable." *Golden ADA, Inc. v. United States*, 934 F.Supp. 341, 345 (N.D.Cal.1996) (citing *Revis v. United States*, 558 F.Supp. 1071, 1078 (D.R.I.1983)). Here, part of the jeopardy assessment encompassed the taxable amount of the $510,000 installment payment that the plaintiff received during the 2010 tax year, for which "[t]he German Competent Authority . . . confirm[ed] that [the plaintiff] had not paid tax in Germany." Gov't's Mem. at 9. The remainder of the jeopardy assessment amount comprised an expatriation tax on the future proceeds of the stock sale, which was assessed because the plaintiff "fail[ed] . . . to certify under penalty of perjury that 'he has met the requirements of this title for the 5 preceding taxable years or fail[ed] to submit such evidence of such compliance' " as he was required to do upon renouncing his United States residency. Gov't's Mem. at 10 (citation omitted); *see also* 26 U.S.C. § 877(a)(2)(C). The plaintiff has failed entirely to offer any arguments or evidence to rebut the presumption of reasonableness, and thus "the [C]ourt cannot find that the amount of the assessment is inappropriate." *See Golden ADA, Inc.*, 934 F.Supp. at 345. Accordingly, the Court finds that the assessment of $216,772 was reasonable.

## CONCLUSION

Because the Court finds for the foregoing reasons that the assessment and levy were reasonable and that the amount of the assessment was reasonable, it is

**ORDERED** that the United States' Motion for Summary Determination is **GRANTED.** It is further

**ORDERED** that Gerd Topsnik['s] Motion for Summary Determination and Opposition to [the] United States' Motion for Summary Determination is **DENIED.** It is further

**ORDERED** that this case is **CLOSED.**

**SO ORDERED** this 2nd day of December, 2013.