146 T.C. No. 1

UNITED STATES TAX COURT

GERD TOPSNIK, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2482-14.                    Filed January 20, 2016.

In 2004 P, a German citizen, made an installment sale of his stock in a U.S. corporation, and in 2010, the year in issue, he received equal monthly payments pursuant to a promissory note executed in connection with the sale. He filed a late Form 1040NR, U.S. Nonresident Alien Income Tax Return, for 2010 claiming that the installment sale proceeds were exempt from taxation by virtue of the U.S.-Germany Tax Treaty. On Nov. 20, 2010, P completed paperwork to formally abandon his lawful permanent resident (LPR) status.

R determined that P is liable for an income tax deficiency for 2010 attributable to the gain on his installment sale of stock. R also determined that P was a "covered expatriate" who expatriated in 2010 and must recognize gain on the deemed sale of his installment obligation on the day before his expatriation under I.R.C. sec. 877A. R further determined that P is liable for an accuracy-related penalty and a failure to file addition to tax. P alleges that he is not liable for the installment sale proceeds because he was a German resident who

expatriated on Dec. 31, 2009.  P has moved for summary judgment, and R has cross-moved for partial summary judgment.

Held:  P expatriated on Nov. 20, 2010, when he formally abandoned his status as an LPR.

Held, further, P is liable for tax on gains attributable to the 11 monthly installment payments that were made during 2010 before his expatriation date.

Held, further, P is liable for tax on gain from the deemed sale of his right to installment sale proceeds on the day before his expatriation date pursuant to I.R.C. sec. 877A.

Charles Herbert Magnuson, for petitioner.

Michael K. Park and Najah J. Shariff, for respondent.

OPINION

KERRIGAN, Judge:  This case is before the Court on petitioner's motion for summary judgment and respondent's cross-motion for partial summary judgement.  Petitioner was issued a notice of deficiency for tax year 2010.  In his motion petitioner contends that:  (1) he was a German resident in 2010; (2) section 877A does not apply; and (3) the section 6662 penalty and the section 6551

addition to tax do not apply. In respondent's cross-motion for partial summary judgment respondent contends that petitioner (1) was not a German resident and (2) was a "covered expatriate" who expatriated in 2010 and must recognize gain on the deemed sale of his installment obligation on the day before his expatriation date under section 877A.

Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for the tax year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

## Background

Petitioner was born in Germany. He has a German passport and a German driver's license. Respondent contends that petitioner owned the Schwartze Pfütze inn (inn) and had a room there. Petitioner did not present evidence of ownership of the inn, and he claims that he and his brother managed it and that he had access to a room there.

Petitioner's Green Card

On February 3, 1977, petitioner received a Form I-551, Permanent Resident Card or Alien Registration Card (green card), and became a lawful permanent resident (LPR) of the United States. Petitioner renewed his green card every 10

years. On March 3, 2003, petitioner requested renewal of his green card by filing a U.S. Immigration and Naturalization Service (INS) Form I-90, Application to Replace Permanent Resident Card. On his Form I-90 petitioner characterized himself as a permanent resident and listed his U.S. mailing address in Hawaii. Petitioner's Form I-90 was approved on March 1, 2004, and his LPR status was renewed through March 1, 2014.

Petitioner's Joint Venture, Settlement, and Stock Sale

In 1986 petitioner started a joint venture named Gourmet Foods, Inc. (Gourmet Foods), with its principal place of business in California. In 2000 petitioner sued a number of individuals and entities involved with Gourmet Foods' business. The suit ended in settlement with petitioner agreeing to sell, on July 30, 2004, his stock in Gourmet Foods for $5,427,000 in an installment sale. Petitioner was entitled to receive an initial downpayment of $1,600,000 and then monthly installments of $42,500 until the remaining $3,827,000 was paid. At the time of sale petitioner's tax basis in the Gourmet Foods stock was $748,418 and his gross profit from the installment sale was $4,678,582. His gross profit percentage was 86.21%.

Petitioner received the downpayment and monthly installment payments as planned. The final monthly installment payment was made on September 3, 2013.

In 2010 petitioner received 12 monthly installment payments of $42,500 for a total of $510,000.

As of November 19, 2010, the amount of unpaid principal and accrued interest on the remainder of the installment agreement had a fair market value of $1,373,374.

Formal Abandonment of Petitioner's Green Card

On November 20, 2010, petitioner completed a U.S. Citizenship and Immigration Services (USCIS) Form I-407, Abandonment of Lawful Permanent Resident Status, to formally abandon his green card and LPR status. USCIS accepted his surrendered green card. On his Form I-407 petitioner provided an "intended or actual permanent residence abroad" in the Philippines.

Petitioner's Postabandonment Noncompliance

Since filing his Form I-407 petitioner has failed to file the required Form 8854, Initial and Annual Expatriation Statement, and has failed to certify, under penalties of perjury, that he has complied with all of his U.S. Federal tax obligations for the five taxable years preceding the taxable year that includes the expatriation date, including his obligations to file income tax returns and obligations to pay all relevant tax liabilities, interest, and penalties. Petitioner did

not file all his U.S. income tax returns and was not in payment compliance on the tax owed for the five years before his expatriation.

Petitioner's 2010 Tax Return

Petitioner did not file a Form 1040, U.S. Individual Income Tax Return, for tax year 2010. On August 2, 2011, he did, however, file a delinquent Form 1040NR, U.S. Nonresident Alien Income Tax Return. On his Form 1040NR petitioner reported $439,671 ($510,000 × 86.21% gross profit percentage) as being exempt under Article 13 (Gains) of the U.S.-Germany Tax Treaty.

Jeopardy Assessment, Levy and Notice of Deficiency

On July 18, 2013, respondent made a jeopardy assessment of an increase in tax deficiency of $138,903, an accuracy-related penalty of $27,781, and a failure to timely file addition to tax of $13,890 for the taxable period in 2010. On August 7 and September 3, 2013, respondent levied on $49,310 of petitioner's remaining installment sale proceeds in partial satisfaction of his 2010 income tax liability.

On September 11, 2013, respondent issued petitioner a notice of deficiency for taxable year 2010 determining the same deficiency, accuracy-related penalty under section 6662, and addition to tax for failure to timely file under section 6651(a)(1) as in the jeopardy assessment. The deficiency included the first 11 of

the monthly installment payments made during the 2010 tax year as well as the section 877A deemed sale proceeds.

Prior District Court Litigation

On March 16, 2011, respondent made a jeopardy assessment of petitioner's liabilities for tax, penalties, and interest for the years 2004-09 and, thereafter, levied on the Gourmet Foods installment payments in partial satisfaction of those liabilities.

On August 23, 2011, petitioner filed a complaint and, thereafter, an amended complaint against the United States in the U.S. District Court for the Central District of California requesting a review of respondent's jeopardy assessments and levies, including the foregoing jeopardy assessment and levies, and requesting refunds for 2004 and 2005 and damages for unauthorized collection actions. The defendant United States moved to dismiss the case on several grounds, including improper venue. After noting that petitioner "does not reside in any judicial district since he currently resides in Germany", the District Court held that, under the venue provisions of 28 U.S.C. sec. 1402(a)(1), petitioner "may not file his claim in a district court" and that his "only recourse is to prosecute his claim in the United States Claims Court, which has concurrent jurisdiction over tax refund actions." Topsnik v. United States, No.

2:11-cv-06958-JHN-MRW, 2012 WL 10637570, at *1 (C.D. Cal. Jan. 17, 2012), aff'd, 554 F. App'x 630 (9th Cir. 2014) (Topsnik I). On that basis the District Court granted the defendant's motion to dismiss. Id.[1]

Information Exchanges Between the United States and Germany

On August 23, 2013, the U.S. Competent Authority made a request, pursuant to Article 26, Exchange of Information and Administrative Assistance of the U.S.-Germany Tax Treaty, to the German Competent Authority for information pertaining to petitioner's residency status in Germany and his tax return filing history in Germany.

On November 21, 2013, the U.S. Competent Authority received a letter from the German Competent Authority which provided the following information: (1) for tax year 2010 petitioner was registered in Germany as a person subject to taxation as a nonresident; (2) petitioner did not file a German tax return for 2010;

---

[1]Following the District Court's dismissal of petitioner's suit due to improper venue and while petitioner's appeal of that ruling was pending before the Court of Appeals for the Ninth Circuit, petitioner brought suit for refund in the Court of Federal Claims. The defendant United States moved to continue a temporary stay of the case pending the outcome of petitioner's appeal of the District Court ruling. The Court of Federal Claims denied the motion on the ground that there was no venue issue before it, and that, whatever disposition the Court of Appeals were to make of petitioner's appeal, it would retain subject matter jurisdiction over petitioner's refund claim and, therefore, could proceed to address the merits of that claim. See Topsnik v. United States, 114 Fed. Cl. 1 (2013) (Topsnik II).

(3) petitioner was not registered in the German township of Oerlenbach in 2010, nor did he have a registered residence or habitual abode in Germany in 2010; (4) the inn was sold on December 1, 2010; and (5) from January 1 to April 30, 2010, the inn was vacant and from May 1 through November 31, 2010, the inn was run by a landlord.

On December 9, 2013, the U.S. Competent Authority sent the German Competent Authority a letter stating that the German Competent Authority's response indicates that it is "not apparent" petitioner does not have a residence or habitual abode in Germany and requested confirmation. The letter also requested residency information for two additional German cities: Freiburg and Bruchsal.

On June 24, 2014, the U.S. Competent Authority received a letter from the German Competent Authority which provided the following information: (1) petitioner is not listed with the tax authority in Freiburg City; (2) petitioner is not listed with the tax authority in Bruchsal; and (3) since 2000, petitioner has, on occasion, resided in a room at Hans and Ingenborg Topsnik's house in Freiburg free of charge.

## Discussion

I.      Summary Judgment

Full or partial summary judgment may be granted where the pleadings and other materials show that there is no genuine dispute as to any material fact and that a decision may be rendered as a matter of law.  Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). The burden is on the moving party to demonstrate that there is no genuine dispute as to any material fact and that he or she is entitled to judgment as a matter of law. FPL Grp., Inc. & Subs. v. Commissioner, 116 T.C. 73, 74-75 (2001).  In considering a motion for summary judgment, evidence is viewed in the light most favorable to the nonmoving party.  Bond v. Commissioner, 100 T.C. 32, 36 (1993).  The nonmoving party may not rest upon the mere allegations or denials of his or her pleading but must set forth specific facts showing there is a genuine dispute for trial.  Sundstrand Corp. v. Commissioner, 98 T.C. at 520.

Petitioner moved for summary judgment, and respondent cross-moved for partial summary judgment.  Each party has the burden to demonstrate that there is no genuine dispute as to any material fact.  After reviewing the pleadings we conclude that a decision may be rendered as a matter of law.

II.     Whether Petitioner Was a German Resident During 2010

Petitioner claims that he was a German resident during 2010 and therefore the monthly installment payments during 2010 were exempt from U.S. taxation under the U.S.-Germany Tax Treaty.  Respondent contends that petitioner was not a German resident during 2010.

To determine whether petitioner was a German resident in 2010, we must look to the U.S.-Germany Tax Treaty.  The U.S.-Germany Tax Treaty, as applicable for 2010, consists of three documents:  (1) the original treaty, which was signed in 1989 but which entered into force in 1991; (2) the 1989 protocol executed in 1989 on the same day the treaty was signed and which entered into force contemporaneously with the treaty; and (3) the 2006 protocol, which entered into force on December 28, 2007, and is effective for taxes other than withholding taxes (e.g., for income tax) as of January 1, 2008.  Therefore, the original treaty, as amended by the 2006 protocol (sometimes, post-2006 treaty), is applicable for petitioner's 2010 tax year.

Article 4 of the original treaty defines the term "resident" for purposes thereof.  Before its amendment by the 2006 protocol, article 4, paragraph 1, provided as follows:

For the purposes of this Convention, the term "resident of a Contracting State" means any person who, under the laws of that State, is liable to tax therein by reason of his domicile, residence, place of management, place of incorporation, or any other criterion of a similar nature, provided, however, that

      (a) this term does not include any person who is liable to tax in that State in respect only of income from sources in that State or capital situated therein; and

      (b) in the case of income derived or paid by a partnership, estate, or trust, this term applies only to the extent that the income derived by such partnership, estate, or trust is subject to tax in that State as the income of a resident, either in its hands or in the hands of its partners or beneficiaries.

      Convention for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion With Respect to Taxes on Income and Capital and to Certain Other Taxes, U.S.-Ger. Aug. 29, 1989, 1708 U.N.T.S. 3 (entered into force Aug. 21, 1991).

The 2006 protocol modified article 4, paragraph 1, to read as follows:

For the purposes of this Convention, the term "resident of a Contracting State" means any person who, under the laws of that State, is liable to tax therein by reason of his domicile, residence, place of management, place of incorporation, or any other criterion of a similar nature, and also includes that State and any political subdivision or local authority thereof. The term, however, does not include any person who is liable to tax in that State in respect only of income from sources in that State or of profits attributable to a permanent establishment in that State or capital situated therein. [Protocol Amending the Convention for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion With Respect to Taxes on Income and Capital and to Certain Other Taxes Signed on 29th

August 1989, U.S.-Ger., June 1, 2006, 2504 U.N.T.S. 90, available at https://treaties.un.org/doc/Publication/UNTS/Volume%202504/v2504 .pdf.]

Article 4, paragraph 1, of the original treaty, through subparagraph (a) (as applicable to individuals) is identical, in substance, to article 4, paragraph 1 of the post-2006 treaty.  Both define a "resident of a Contracting State" to include an individual "liable to tax therein by reason of his * * * [domicile or residence]", and both exclude from the definition "any person who is liable to tax in that State in respect only of income from sources in that State * * * or capital situated therein."

Article 13, paragraph 1 (the same in both the original and post-2006 treaties), provides:

Gains derived by a resident of a Contracting State from the alienation of immovable property * * * [i.e., real property] situated in the other Contracting State may be taxed in that other State.

Article 13, paragraph 2 (also unchanged by the 2006 protocol), provides in pertinent part:

For the purposes of this Article, the term "immovable" property situated in the other Contracting State shall include

\*     \*     \*     \*     \*     \*     \*

(b) shares * * * in a company that is * * * a resident of that other Contracting State, the assets of which company consist or

consisted wholly or principally of immovable property situated in
such other Contracting State * * *

Article 13, paragraph 5, of both the original and post-2006 treaties provides,

for relevant purposes, that gains from the alienation of intangible property (other

than the shares referred to in article 13, paragraph 2(b)) "shall be taxable only in

the Contracting State of which the alienator is a resident."

Petitioner's claim of German residency rests on (a) estoppel and (b) his

contacts with Germany during the years in issue.

A.     Estoppel

Petitioner argues that, because respondent argued before the District Court

in Topsnik I that petitioner is a German resident, and because the court dismissed

the case for improper venue on that basis, respondent is estopped, under the

doctrine of judicial estoppel, from asserting a contrary position in this case.  This

argument and the underlying facts are identical to the argument he presented in

Topsnik v. Commissioner, 143 T.C. 240 (2014) (Topsnik IV),[2] where we held that

estoppel did not apply because petitioner's status as a German resident during the

_____

[2]We follow the same conventions used in Topsnik IV, which referred to
Topsnik v. United States, No. 2:11-cv-06958-JHN-MRW, 2012 WL 10637570
(C.D. Cal. Jan. 17, 2012), aff'd, 554 F. App'x 630 (9th Cir. 2014), as Topsnik I, to
Topsnik v. United States, 114 Fed. Cl. 1 (2013), as Topsnik II, and to Topsnik v.
United States, 12 F. Supp. 3d 1 (D.D.C. Dec. 2, 2013), as Topsnik III.

years in issue was not addressed by the parties and was not in issue. See id. at 257-258. The same analysis applies here with respect to 2010. We do not agree with petitioner.

B. German Contacts

Petitioner's German contacts include a German driver's license and a German passport. He also contends that he owned the inn.

As noted supra, with respect to individuals, both the original treaty and the post-2006 treaty limit the definition of a "'resident of a Contracting State'" to individuals "liable to tax therein by reason of * * * [domicile or residence]", and both exclude from the definition "any person who is liable to tax in that State in respect only of income from sources in that State * * * or capital situated therein." The treaty test for residence in a contracting State is the individual's liability to pay tax to the State as a resident, which, in the case of Germany, means that the individual must be taxable on his or her worldwide income. See Staff of J. Comm. on Taxation, Explanation of Proposed Protocol to the Income Tax Treaty Between the United States and Germany, at 9 (J. Comm. Print 2007) ("Individuals resident in Germany are subject to tax on their worldwide income."); Tax Treaties (CCH) para. 3229, p. 77,181. The test for residency under the U.S.-Germany Tax Treaty is confirmed by the commentary with respect to article 4 of the Organization for

Economic Cooperation and Development (OECD) Model Double Tax Convention on Income and Capital (1977) (OECD Model Treaty), article 4, paragraph 1 of which is, in all pertinent respects, identical to article 4, paragraph 1, of the original and post-2006 treaties.[3]  The commentary to article 4, paragraph 1 states, in pertinent part: "As far as individuals are concerned, the definition aims at covering the various forms of personal attachment to a State which, in the domestic taxation laws, form the basis of a comprehensive taxation (full liability to tax)."  OECD Committee on Fiscal Affairs, Model Tax Convention on Income and on Capital, at C(4-9) (1997);[4] see Topsnik IV, 143 T.C. at 259-260.

Petitioner's recitation of his contacts with Germany during 2010 is not relevant to his status as a German resident during that year except insofar as they served to subject him to German taxation of his worldwide income.  Petitioner

[3]Where the parties to a bilateral tax treaty were both OECD members when the model treaty and commentary were drafted (which is the case herein) and the bilateral treaty wording is substantially the same as that of the model treaty (also the case herein), we have used the model treaty commentary to interpret provisions of the bilateral tax treaty.  See Podd v. Commissioner, T.C. Memo. 1998-418, slip op. at 9-10 (and the cases cited thereat).

[4]Subsequent updates of the OECD Model Treaty left unchanged, in all 18 pertinent respects, the article 4, paragraph 1, definition of resident contained in the 1977 OECD Model Treaty as it pertains to individuals.  Therefore, the above-quoted commentary with respect to that definition applies to all of the OECD Model Treaties published since 1977.  See, e.g., Tax Treaties (CCH) paras. 200.04, 200A.04.

does not allege that he is subject to German taxation on his worldwide income, and the evidence in the record is uniformly to the contrary.

The information obtained by the German competent authority from the German tax authority reveals that (1) for tax year 2010 petitioner was registered in Germany as a person subject to taxation as a nonresident; (2) petitioner did not file a German tax return for 2010; (3) petitioner was not registered in the German township of Oerlenbach, Freiburg City, or Bruchsal in 2010, nor did he have a registered residence or habitual abode in Germany in 2010; and (4) since 2000 petitioner has, on occasion, resided in a room at Hans and Ingenborg Topsnik's house in Freiburg free of charge. There is no evidence in the record to refute the information obtained by the German competent authority. We find that petitioner was not a "resident" of Germany in 2010 as defined by article 4, paragraph 1, of the U.S.-Germany Tax Treaty. Accordingly, petitioner's monthly installment payments were taxable by the United States.

III. Whether Petitioner Is a "Covered Expatriate"

A. Section 877A Generally

The Heroes Earnings Assistance and Relief Tax Act of 2008, Pub. L. No. 110-245, sec. 301, 122 Stat. at 1638-1644, which was signed into law on June 17, 2008, added new section 877A effective for individuals who expatriate on or after

June 17, 2008. Section 877A(a) imposes a mark-to-market regime on covered expatriates. Under section 877A(a)(1) all property of a covered expatriate is treated as being sold on the day before his or her expatriation date for its fair market value. Section 877A(a)(2)(A) provides that any gain arising from the deemed sale is taken into account for the taxable year of the deemed sale notwithstanding any other provisions of the Code.

B.      Expatriate

The term "expatriate" includes:  "(A) any United States citizen who relinquishes his citizenship, and (B) any long-term resident of the United States who ceases to be * * * [an LPR] of the United States (within the meaning of section 7701(b)(6))." Sec. 877A(g)(2).  Under the regulations associated with section 7701(b)(6), a person generally is an LPR if he holds a green card. See sec. 301.7701(b)-1(b)(1), Proced. & Admin. Regs.

Section 877A(g)(5) defines a "long-term resident" of the United States by cross-reference to section 877(e)(2), which provides that a long-term resident is:

> [A]ny individual (other than a citizen of the United States) who is a lawful permanent resident of the United States in at least 8 taxable years during the period of 15 taxable years ending with the taxable year * * * [of expatriation].  For purposes of the preceding sentence, an individual shall not be treated as a lawful permanent resident for any taxable year if such individual is treated as a resident of a foreign country for the taxable year under the provisions of a tax treaty

between the United States and the foreign country and does not waive the benefits of such treaty applicable to residents of the foreign country.

Petitioner was an LPR of the United States beginning on February 3, 1977, the date he received his green card. If petitioner expatriated in 2010, as we find and discuss below, then to be a long-term resident he would have to be an LPR for 8 of the 15 tax years beginning with tax year 1996. In Topsnik IV we held that petitioner was an LPR of the United States during tax years 2004-09. We further held that petitioner was not a resident of Germany during tax years 2004-09. Id. at 261. We held above that petitioner was not a German resident in 2010. Those years constitute 7 of the 8 years necessary for petitioner to fit under the definition of long-term resident of the United States. Petitioner argues that he has been a resident of Germany since 1999. Even if we accept that he is correct for the tax years 1999-2003, he does not argue, and has presented no evidence to suggest, that he was not an LPR of the United States for the three years from 1996-98. Taken together with our holding in Topsnik IV, this means that petitioner was an LPR for at least 10 out of the 15 years before formally abandoning his LPR status. Therefore, petitioner is treated as a "long-term resident of the United States" for the purposes of section 877A.

C.     Covered Expatriates

We must now determine whether petitioner was a "covered expatriate". Section 877A(g)(1) provides that a "covered expatriate" means an expatriate who meets at least one of the requirements set out in section 877(a)(2)(A)-(C). Subparagraph (C) provides that a person is a covered expatriate if "such individual fails to certify under penalty of perjury that he has met the requirements of this title for the 5 preceding taxable years or fails to submit such evidence of such compliance as the Secretary may require."

Section 877A(i) provides that the Secretary shall prescribe regulations as may be necessary and appropriate to carry out the purposes of the section. Such regulations have not been yet been provided. Instead, the IRS has promulgated guidance regarding this section in Notice 2009-85, 2009-45 I.R.B. 598. We are not bound by Notice 2009-85, supra, see Compaq Computer Corp. v. Commissioner, 113 T.C. 363, 372 (1999), but it is an official statement of the Commissioner's position and we may let it persuade us, see Nationalist Movement v. Commissioner, 102 T.C. 558, 583 (1994), aff'd, 37 F.3d 216 (5th Cir.1994).

Notice 2009-85, sec. 8, 2009-45 I.R.B. at 611, explains that for purposes of certifying tax compliance for the five years before expatriation pursuant to section 877(a)(2)(C):

All U.S. citizens who relinquish their U.S. citizenship and all long-term residents who cease to be lawful permanent residents of the United States (within the meaning of section 7701(b)(6)) must file Form 8854 in order to certify, under penalties of perjury, that they have been in compliance with all federal tax laws during the five years preceding the year of expatriation. Individuals who fail to make such certification will be treated as covered expatriates within the meaning of section 877A(g) * * *

For the year of his expatriation petitioner failed to complete and file a Form 8854 certifying under penalties of perjury that he has complied with all of his U.S. Federal tax obligations for the five taxable years preceding the taxable year that includes his expatriation date. Respondent has provided evidence that petitioner did not file all of his U.S. income tax returns before expatriating and was not in payment compliance for taxes owed for the five years before expatriation in taxable year 2010. Thus petitioner could not have certified under penalties of perjury on a Form 8854 that he had been in tax compliance for the five years before expatriation. Consequently, because petitioner failed to certify tax compliance for the five years before expatriation, he is a "covered expatriate" as defined by section 877A(g)(1)(A).

As a covered expatriate petitioner is treated as having sold all his property on the day before his expatriation date and is subject to income tax on the net

- 22 -

unrealized gain arising from property deemed sold while he was still a U.S. LPR.

See sec. 877A(a)(2)(A); see also Notice 2009-85, supra.

D.    Expatriation Date

Since petitioner is a covered expatriate subject to taxation under section

877A, we must determine his expatriation date.  Section 877A(g)(3) defines the

term "expatriation date" as the date an individual relinquishes U.S. citizenship or,

in the case of a long-term resident of the United States, the date on which the

individual ceases to be an LPR of the United States within the meaning of section

7701(b)(6).

Section 7701(b)(6) provides that an individual is an LPR if:

> (A) such individual has the status of having been lawfully
> accorded the privilege of residing permanently in the United States as
> an immigrant in accordance with the immigration laws, and

> (B) such status has not been revoked (and has not been
> administratively or judicially determined to have been abandoned).

> An individual shall cease to be treated as * * * [an LPR] of the United
> States if such individual commences to be treated as a resident of a
> foreign country under the provisions of a tax treaty between the
> United States and the foreign country, does not waive the benefits of
> such treaty applicable to residents of the foreign country, and notifies
> the Secretary of the commencement of such treatment.

Section 301.7701(b)-1(b)(3), Proced. & Admin. Regs., indicates that when

an alien initiates a determination, "resident status is considered to be abandoned

when the individual's application for abandonment (INS Form I-407) * * * is filed with the INS".

Petitioner argues that he was a German resident in 2010 and that he therefore ceased to be an LPR on December 31, 2009. Respondent contends that petitioner ceased to be an LPR on November 20, 2010, when he initiated abandonment of his LPR status by completing a Form I-407 and surrendering his green card.

We held above that petitioner was not a German resident during 2010. We find that his date of expatriation was November 20, 2010, when he filed with the INS a Form I-407 and surrendered his green card. See id.

IV. Section 877A

Petitioner argues that section 877A, enacted in 2008, is inapplicable to his 2004 installment sale transaction because the statute cannot be retroactive. He also argues that if section 877A does apply, it was applied improperly.

A. Applicability to Right to Installment Sale Payments

Notice 2009-85, sec. 3, 2009-45 I.R.B. at 599, states in relevant part that, for purposes of the mark-to-market regime, a covered expatriate is deemed to have sold any interest in property that he or she is considered to have owned other than property described in section 877A(c) (deferred compensation, specified tax-

deferred accounts, and interest in a nongrantor trust).  On the day before petitioner's expatriation date, petitioner held the right to monthly installment payments that he received in exchange for the 2004 sale of his shares of stock in Gourmet Foods.  See sec. 877A(a)(1).

An installment obligation received as a result of an installment sale is generally treated as property for purposes of the Code.  Section 15A.453-1(d)(2)(i), Temporary Income Tax Regs., 46 Fed. Reg. 10717 (Feb. 4, 1981), states:  "An installment obligation is considered to be property and is subject to valuation * * * without regard to whether the obligation is embodied in a note, an executory contract, or any other instrument, or is an oral promise enforceable under local law."

To determine which property would be subject to the mark-to-market regime of section  877A(a), Notice 2009-85, supra, advises that we look to see whether property is of a type whose value would be includible in the value of a decedent's gross estate for Federal estate tax purposes if the covered expatriate died on the day before his expatriation date.  A covered expatriate is considered to own any interest in property that would be taxable as part of his gross estate for Federal estate tax purposes as if he or she had died on the day before the expatriation date as a citizen or resident of the United States.  Id.

The value of an installment obligation held at death is included in the value of a decedent's gross estate for Federal estate tax purposes. Section 2031(a) specifies that the value of the gross estate comprises the value of "all property, real or personal, tangible or intangible, wherever situated", to the extent provided in sections 2033 though 2046. Section 2033 provides that "[t]he value of the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death." Section 20.2033-1(b), Estate Tax Regs., lists examples of property includible in a decedent's gross estate and provides, in relevant part, that "[n]otes or other claims held by the decedent are likewise included". In Gump v. Commissioner, 124 F.2d 540, 543 (9th Cir. 1942), aff'g 42 B.T.A. 197 (1940), the Court of Appeals for the Ninth Circuit held that the fair market value of an installment note received in exchange for a sale of stock was included in a decedent's gross estate.

In arguing that the 2008 statute is inapplicable to his 2004 transaction, petitioner misstates the law. An installment obligation is treated as property which is held at the time an expatriate's assets are marked-to-market. Petitioner's assets are marked-to-market on November 19, 2010, the day before his expatriation.

B.    Mark-to-Market Calculation

Because petitioner's right to receive monthly installment payments is property whose value would be included in the value of his gross estate for Federal estate tax purposes if he died on the day before he expatriated, petitioner is deemed to have sold the installment obligation for its fair market value on the day before he expatriated. See sec. 877A(a)(1); Notice 2009-85, supra.

Petitioner argues that even if section 877A does apply to his transaction, it was applied improperly. Respondent contends that section 877A was applied properly.

In computing a tax liability under the mark-to-market regime, a covered expatriate must use the fair market value of each interest in property as of the day before the expatriation date in accordance with the valuation principles applicable for purposes of Federal estate tax, without regard to sections 2032 and 2032A (relating to alternate valuation dates or the valuation of certain farm or real property). Notice 2009-85, supra. Section 20.2031-4, Estate Tax Regs., provides guidance for valuing installment notes for purposes of including the value in the value of a decedent's gross estate. It states: "The fair market value of notes, secured or unsecured, is presumed to be the amount of unpaid principal, plus interest accrued to the date of death, unless the executor establishes that the value

is lower or that the notes are worthless." See Estate of Robinson v. Commissioner, 69 T.C. 222 (1977). On November 19, 2010, the day before petitioner expatriated, petitioner's right to receive monthly installment payments is presumed to have had a fair market value of $1,373,374 on the basis of the amount of unpaid principal and accrued interest.

Section 453B(b) provides that a taxpayer's basis in an installment obligation is the excess of the face value of the obligation (the remaining principal amount) over an amount equal to the income which would be returnable were the obligation satisfied in full (the portion of the payments which would be included in the taxpayer's income). Petitioner's basis in his right to receive monthly installment payments is $189,388, the excess of the face amount of the right, $1,373,374, over an amount equal to the income which would be returnable were the right satisfied in full, $1,183,986.

Respondent correctly applied section 877A to petitioner's transaction.

Respondent's motion for partial summary judgment will be granted, and petitioner's motion for summary judgment will be denied.

Any contentions we have not addressed are irrelevant, moot, or meritless.

To reflect the foregoing,

**An appropriate order**

**will be issued**.
