T.C. Memo. 2016-22

UNITED STATES TAX COURT

LG KENDRICK, LLC, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 900-14L.                          Filed February 16, 2016.

Michael E. Lunnon (member), for petitioner.

Luke D. Ortner, for respondent.

MEMORANDUM OPINION

MARVEL, <u>Judge</u>:  Pursuant to section 6330(d)[1] petitioner seeks review of a

determination by respondent (hereinafter IRS or respondent) to sustain collection

_____

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code as amended and in effect for the relevant times, and all Rule
references are to the Tax Court Rules of Practice and Procedure.

[*2] actions by levy and the filing of a notice of Federal tax lien (NFTL) relating to petitioner's unpaid Federal employment taxes, i.e., unpaid withholding and Federal Insurance Contributions Act (FICA) tax liabilities with respect to its Forms 941, Employer's Quarterly Federal Tax Return, for all four quarters of 2011 and the first three quarters of 2012 and petitioner's unpaid Federal Unemployment Tax Act (FUTA) tax liability with respect to its Form 940, Employer's Annual Federal Unemployment (FUTA) Tax Return, for the 2011 taxable year (collectively, periods at issue).[2]

The issues for decision are whether petitioner may challenge its underlying liabilities (and if so, the correct amounts of the underlying liabilities) and whether the Appeals Office abused its discretion in sustaining the NFTL filing and the proposed levy. We hold that petitioner cannot challenge the underlying liabilities, and we sustain the IRS' determination.

## Background

The parties submitted this case fully stipulated under Rule 122. The stipulated facts and facts drawn from stipulated exhibits are incorporated herein by

---

[2]For the remainder of this report we use the term "employment tax" to refer to taxes under FICA, secs. 3101-3128, FUTA, secs. 3301-3311, and income tax withholding, secs. 3401-3406 and 3509.

[*3] this reference.  Petitioner's principal place of business was in Gallup, New Mexico, when the petition was filed.

Petitioner is a single-member LLC formed in 2009 that operates as a franchise of the business The UPS Store.  Its manager and sole member is Michael E. Lunnon.[3]  From 1995 until petitioner's formation in 2009, Mr. Lunnon operated the franchise business as a sole proprietorship, originally under the name Mail Boxes Etc.  Mr. Lunnon reported wages and paid employment tax with respect to employees of the franchise to the State of New Mexico until 2002.  Mr. Lunnon has maintained a workers' compensation and employer's liability insurance policy since at least 2004.[4]  The insurance policy was renewed every year until at least 2012.

While examining taxable periods before the periods at issue, Revenue Officer T.W. Lyons reviewed bank records associated with petitioner's business, made a field call to the business, and concluded that petitioner had paid employees

_____

[3]The IRS revenue officer's case notes suggest that Mr. Lunnon at one point represented that the Michael Lunnon Revocable Trust was at least a partial owner of petitioner.  However, the case notes also state that Mr. Lunnon is the only member listed on petitioner's articles of organization, and the record does not contain any information about the Michael Lunnon Revocable Trust.

[4]Mr. Lunnon, not petitioner, is the named insured on the insurance policy for the periods at issue even though Mr. Lunnon operated his business through petitioner during that time.

[*4] and had employment tax liabilities.[5]  Although the business continued to operate during the periods at issue, as Revenue Officer Lyons confirmed with a field call and multiple telephone calls to the business, petitioner did not file Forms 941 or a Form 940 or pay any employment tax for the periods at issue.

The IRS requested that Mr. Lunnon file on behalf of petitioner delinquent employment tax returns for the periods at issue, but Mr. Lunnon refused.  Revenue Officer Lyons therefore prepared a substitute for return under section 6020(b) for each period at issue using the estimated annual payroll amounts shown on the workers' compensation insurance policy documents for 2011-12.  Revenue Officer Lyons concluded on the basis of the workers' compensation insurance policy documents that petitioner's monthly payroll was $6,267 during 2011-12.[6]

The revenue officer sent petitioner a Letter 1085(DO), dated October 9, 2012, and blank Forms 940 and 941 by certified mail to the business address. One of the individuals who the IRS had determined was an employee, Arnold

---

[5]Those periods are the subject of the opinions in Lunnon v. Commissioner, T.C. Memo. 2015-156, and LG Kendrick, LLC v. Commissioner, 146 T.C. ___ (Jan. 21, 2016).

[6]The revenue officer relied on workers' compensation insurance policy documents to calculate petitioner's approximate payroll because he believed that after the IRS had assessed trust fund recovery penalties against Mr. Lunnon, which are not before the Court, petitioner stopped issuing checks to employees and instead paid their wages in cash.

[*5] LaCruz, signed the certified mail receipt on October 13, 2012. The letter informed petitioner about the substitutes for returns and stated that petitioner had 30 days to prepare and mail employment tax returns, mail additional information petitioner wanted the IRS to consider, or request a conference with Revenue Officer Lyons.[7] The letter further stated that the IRS would process the substitutes for returns and assess the tax reflected on the returns "plus any additional penalties and interest" if petitioner did not respond within 30 days. The letter explained that petitioner's representative could request a meeting or a telephone conference with the revenue officer's supervisor if petitioner did not agree "with any or all of the IRS findings given you". If petitioner still did not agree with the findings after a conference with the supervisor, it would have the opportunity to "appeal * * * [its] case to the Area Director of General Appeals."

Mr. Lunnon responded to the Letter 1085(DO) on petitioner's behalf by mailing to Revenue Officer Lyons a letter requesting the names and addresses of petitioner's employees and the facts and legal authority underlying the substitutes for returns. Revenue Officer Lyons forwarded the letter to the IRS' area counsel,

---

[7]Although the Letter 1085(DO), dated October 9, 2012, referred to the December 31, 2012, quarter as a delinquent quarter, the notice of determination did not include the December 31, 2012, quarter, and it is not before the Court.

[*6] which approved the processing of the substitutes for returns. The IRS processed the substitutes for returns and assessed the tax shown on the returns.

On February 6, 2013, the IRS mailed to petitioner a Letter 1058, Final Notice of Intent to Levy and Notice of Your Right to a Hearing (levy notice), with respect to the periods at issue. In the levy notice the IRS proposed for the first time additions to tax under section 6651(a)(3) for late payment. The IRS also mailed to petitioner a Letter 3172(DO), Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320, dated February 19, 2013, with respect to the periods at issue. In response to these notices petitioner timely filed a Form 12153, Request for a Collection Due Process or Equivalent Hearing, signed by Mr. Lunnon in his capacity as manager. The hearing request disputed the proposed levy and the NFTL filing, requested withdrawal of the NFTL filing, and stated: "The LLC does not understand any basis for the claims made in the FINAL NOTICE, and does not believe the LLC owes them."[8]

Petitioner's case was transferred to Settlement Officer Joann Mares in the IRS Appeals Office. Settlement Officer Mares scheduled a telephone conference call for July 9, 2013, but Mr. Lunnon told Settlement Officer Mares that petitioner

---

[8]Mr. Lunnon also filed a Freedom of Information Act request around this time for the IRS' documents showing petitioner's payroll for 2010 and 2011.

**[*7]** preferred to conduct the section 6320/6330 hearing through correspondence, and neither he nor another representative participated in a telephone conference. Settlement Officer Mares agreed to conduct the hearing through correspondence and requested that petitioner provide financial information and file its delinquent employment and income tax returns by August 9, 2013.

Petitioner did not give Settlement Officer Mares any of the requested financial information and did not file the requested returns by the deadline. Settlement Officer Mares mailed to petitioner a letter dated August 22, 2013, which stated: "I wasn't sure if you understood [upon the receipt of the Letter 1085(DO)] that you could have prepared and signed tax returns that you believe are correct and return them to the IRS within 30 days. If you have the correct returns you may submit these to me on or before August 31, 2013 so that the Internal Revenue Service can process them." The letter also asked petitioner to explain its relationship with Arnold LaCruz and requested that petitioner submit financial information to Settlement Officer Mares and file the delinquent Forms 941 and 940 for the periods at issue by August 31, 2013, so that she could consider collection alternatives. The letter also warned petitioner that, if it did not respond to the letter, Settlement Officer Mares would make a determination on the basis of information already in the record. Settlement Officer Mares also mailed

[*8] to petitioner the documents that the IRS had relied upon to assess the underlying liabilities, including a section 6020(b) action sheet documenting a field call to petitioner's business where an IRS employee observed employees working at the store, employment tax transcripts from the State of New Mexico, and workers' compensation insurance policy documents.[9]

Instead of supplying the requested information, Mr. Lunnon sent a letter to Settlement Officer Mares challenging the documents that respondent had provided because some of the documents referred to Mr. Lunnon rather than to petitioner, addressed taxable periods other than the periods at issue, and were obtained by subpoena during the pendency of a related Tax Court case. Even after an extension of time to file the delinquent returns, Mr. Lunnon did not cause petitioner to file the delinquent returns or send Settlement Officer Mares pertinent information.

Because petitioner did not give Settlement Officer Mares any relevant information, she sustained the proposed levy and the NFTL filing on the basis of the information in the administrative record. On December 16, 2013, the Appeals

_____

[9]Respondent also provided to petitioner before the sec. 6320/6330 hearing in this case, during the pendency of the case LG Kendrick, LLC, copies of checks drawn on petitioner's bank account that Mr. Lunnon had written to the same individuals twice per month for periods before the periods at issue.

**[*9]** Office issued a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination). The notice of determination explained that the IRS had assessed the underlying liabilities on the basis of wage information from the State of New Mexico, workers' compensation insurance policy documents, payroll records, and a field call. The notice of determination also stated that: petitioner had had a prior opportunity to dispute the underlying liabilities; throughout the section 6320/6330 hearing petitioner had failed to submit evidence adequately contesting the underlying liabilities (or evidence adequately contesting that petitioner had had a prior opportunity to dispute the underlying liabilities); and petitioner's failure to submit financial information and delinquent returns barred the Appeals Office from offering a collection alternative, such as withdrawal of the NFTL filing. Petitioner timely filed a petition in this Court disputing the notice of determination.

Discussion

I.    Section 6320/6330 Hearing

Section 6321 imposes a lien on all property and property rights of a taxpayer liable for taxes where a demand for the payment of the taxes has been made and the taxpayer has failed to pay. The IRS is authorized to file an NFTL with respect to a taxpayer who has an outstanding tax liability and fails to pay

[*10] after notice and demand. Sec. 6323. Section 6320(a) requires the Secretary[10] to send written notice to the taxpayer of the filing of an NFTL and of the taxpayer's right to an administrative hearing on the matter. The conduct and scope of section 6320 hearings are governed by section 6330(c), (d) (other than paragraph (2)(B)), (e), and (g). Sec. 6320(c).

The Secretary is authorized to collect tax by levy upon a taxpayer's property if any taxpayer liable to pay any tax neglects or refuses to pay such tax within 10 days after notice and demand for payment. Sec. 6331(a). Section 6330(a) requires the Secretary to send written notice to the taxpayer of the taxpayer's right to request a section 6330 hearing before a levy is made. If the taxpayer makes a timely request for a hearing, the IRS Appeals Office conducts the hearing. Sec. 6330(b).

At a section 6320 or 6330 hearing a taxpayer may raise any relevant issue, including appropriate spousal defenses, challenges to the appropriateness of the collection action, and collection alternatives, such as an offer-in-compromise or an installment agreement. Sec. 6330(c)(2)(A). Additionally, the taxpayer may contest the validity of the underlying tax liability, but only if the taxpayer did not

---

[10]The term "Secretary" means the Secretary of the Treasury or his delegate. Sec. 7701(a)(11)(B).

**[*11]** otherwise have an opportunity to dispute the tax liability. Sec. 6330(c)(2)(B); Sego v. Commissioner, 114 T.C. 604, 609 (2000).

Following a hearing, the Appeals Office must issue a notice of determination regarding the appropriateness of the collection action. The Appeals Office is required to take into consideration: (1) verification presented by the Secretary that the requirements of applicable law and administrative procedure have been met, (2) relevant issues that the taxpayer raised, and (3) whether the proposed collection action appropriately balances the need for efficient collection of taxes with the taxpayer's concerns regarding the intrusiveness of the proposed collection action. Sec. 6330(c)(3); Wadleigh v. Commissioner, 134 T.C. 280, 287-288 (2010).

Pursuant to sections 6320(c) and 6330(d)(1), we have jurisdiction to review the Appeals Office's determination. See Murphy v. Commissioner, 125 T.C. 301, 308 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006). Where the validity of the underlying tax liability is properly at issue, we review the determination regarding the underlying tax liability de novo. Sego v. Commissioner, 114 T.C. at 610; Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). We review all other determinations for abuse of discretion. Sego v. Commissioner, 114 T.C. at 610; Goza v. Commissioner, 114 T.C. at 182. In reviewing for abuse of discretion, we

[*12] must uphold the Appeals Office's determination unless it is arbitrary, capricious, or without sound basis in fact or law. See, e.g., Murphy v. Commissioner, 125 T.C. at 320; Taylor v. Commissioner, T.C. Memo. 2009-27, 97 T.C.M. (CCH) 1109, 1116 (2009).

## II.    The Underlying Liabilities

We review whether petitioner may challenge the underlying liabilities. Petitioner maintains that it does not owe the underlying employment taxes because (1) the IRS has the burden of proving that petitioner paid employees for the periods at issue and (2) the IRS did not meet this burden because it did not rely upon what petitioner considers adequate evidence to determine the existence of employees and the amounts of their wages. Respondent contends that petitioner may not challenge the underlying liabilities because the Letter 1085(DO) constituted a prior opportunity to dispute the liabilities and because petitioner did not properly raise the issue with the Appeals Office. Because we find that petitioner did not properly raise the underlying liabilities with the Appeals Office after a reasonable opportunity to do so, we do not address whether the Letter 1085(DO) provided petitioner with a prior opportunity to challenge the liabilities. See Caudle v. Commissioner, T.C. Memo. 2014-196, at *6-*7 n.2, aff'd, 603 F. App'x 220 (4th Cir. 2015).

[*13] In reviewing a determination under section 6330(c)(2), including challenges to the underlying liability, we consider only issues that the taxpayer properly raised during the section 6320/6330 hearing. Secs. 301.6320-1(f)(2), Q&A-F3, 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs.; see Giamelli v. Commissioner, 129 T.C. 107, 115 (2007). The taxpayer does not properly raise an issue, including the underlying liability, during the hearing if it "fails to present to Appeals any evidence with respect to that issue after being given a reasonable opportunity to present such evidence." Secs. 301.6320-1(f)(2), Q&A-F3, 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs.; see Pough v. Commissioner, 135 T.C. 344, 349 (2010).

Petitioner had ample opportunity to file its delinquent tax returns or present any other information that it wanted Settlement Officer Mares to consider with respect to the employment tax liabilities. Settlement Officer Mares gave petitioner a deadline of August 9, 2013, to file its delinquent returns. In the letter dated August 22, 2013, Settlement Officer Mares stated that, because petitioner may not have been aware of the opportunity to submit its own returns upon receipt of the Letter 1085(DO), the IRS would process delinquent returns for the periods at issue if petitioner submitted them by August 31, 2013. Even though petitioner responded to this request with generally unhelpful and irrelevant information,

**[\*14]** Settlement Officer Mares allowed petitioner an extension of time to file the returns. She told petitioner that it could use the documents that respondent had provided or any additional information to prepare the returns. Instead of filing returns or producing any relevant information, petitioner continued to assert that it was not liable for the underlying liabilities because respondent could not prove the existence of any employees.

Petitioner cites Holden v. Commissioner, T.C. Memo. 2015-131, and Agudelo v. Commissioner, T.C. Memo. 2015-124, for the proposition that a taxpayer should not bear the burden of proving a negative if the Commissioner can present no substantive evidence to support his deficiency claim. However, Holden and Agudelo are deficiency cases that discuss the minimum evidentiary foundation that the Commissioner must establish before the presumption of correctness attaches to a notice of deficiency. They do not address the requirements for properly raising an issue before the Appeals Office. See Holden v. Commissioner, at \*20-\*21; Agudelo v. Commissioner, at \*9. Petitioner also cites Brown v. Selfridge, 224 U.S. 189, 192 (1912), which is a malicious prosecution case and similarly does not discuss what a taxpayer must do to properly raise its underlying liability before the Appeals Office. See Giamelli v. Commissioner, 129 T.C. at 115.

[*15] Petitioner also invokes the <u>Chenery</u> doctrine, although not by name, to discount respondent's evidence by contending that the determination cannot be upheld on grounds other than those upon which the Appeals Office actually relied. See <u>SEC v. Chenery Corp.</u>, 332 U.S. 194 (1947); <u>SEC v. Chenery Corp.</u> (<u>Chenery I</u>), 318 U.S. 80 (1943); <u>Antioco v. Commissioner</u>, T.C. Memo. 2013-35, at *24-*25. Although it is not entirely clear, petitioner appears to assert that respondent violated the <u>Chenery</u> doctrine because (1) the documentary evidence in the administrative record was insufficient to prove that petitioner had paid employees and, if it had, in what amounts and (2) the notice of determination did not adequately conclude that petitioner had had a prior opportunity to contest its underlying liabilities.

Petitioner is correct in stating that we uphold the Appeals Office's determination only on grounds upon which the Appeals Office actually relied in the notice of determination. See <u>Chenery I</u>, 318 U.S. at 93-95; <u>Antioco v. Commissioner</u>, at *24-*25; <u>Jones v. Commissioner</u>, T.C. Memo. 2012-274, at *22-*23. However, respondent has not attempted to support his determination to sustain the collection actions for reasons other than those outlined in the notice of determination.

[*16] During the section 6320/6330 hearing the Appeals Office provided petitioner with documentary evidence of petitioner's employees, including documents showing employment tax payments to the State of New Mexico and bills and renewal notifications from the workers' compensation insurance policy, and petitioner still did not produce its own evidence tending to refute the Appeals Office's determination. Petitioner contends that the documentary evidence is insufficient because it includes references to taxable periods not at issue, includes references to Mr. Lunnon, and was obtained by subpoena for another Tax Court case. Although the record contains references to taxable periods other than the ones at issue here, it also contains documentary evidence related to the periods at issue. The record overwhelmingly establishes that Mr. Lunnon owns and operates petitioner. Respondent provided the documents to petitioner during the section 6320/6330 hearing, and they sufficiently apprised petitioner of the basis for the underlying assessments for the periods at issue.

The notice of determination clearly stated that the Appeals Office had provided to petitioner the evidence upon which the revenue officer relied in filing the substitutes for returns, that petitioner had had a prior opportunity to dispute the underlying liabilities, and that petitioner had failed to submit evidence during the section 6320/6330 hearing to dispute the underlying liabilities or to contest the

[*17] determination that petitioner had had a prior opportunity to dispute them. Moreover, petitioner stipulated in the stipulation of facts that the Appeals Office determined that petitioner had had a prior opportunity to challenge its underlying liabilities and failed to present evidence during the section 6320/6330 hearing to contest the underlying liabilities despite an opportunity to do so.

Petitioner may not distort the law to justify its continued refusal to cooperate with respondent or its abdication of the fundamental responsibilities of maintaining records and filing tax returns. See sec. 6001; secs. 31.6011(a)-1(a)(1), 31.6011(a)-3, Employment Tax Regs. (requiring employers to file returns under FICA and FUTA). Petitioner did not properly challenge the underlying liabilities during the section 6320/6330 hearing, and we do not address them here.[11] See Pough v. Commissioner, 135 T.C. at 349 (holding that the taxpayer did not properly challenge the underlying liabilities when he did not file amended income tax returns before the Appeals Office issued the notice of determination despite saying he would do so); Busche v. Commissioner, T.C. Memo. 2011-285, slip op. at 32-33 (discussing the taxpayer's and the Commissioner's burdens and

---

[11]Moreover, petitioner did not allege any facts or produce any credible evidence regarding the underlying liabilities in the stipulation of facts or otherwise that would permit us to conclude that it properly raised the issue before the Court. See Rule 331(b)(5); Goza v. Commissioner, 114 T.C. 176, 183 (2000).

**[\*18]** responsibilities during a section 6320/6330 hearing); see also sec. 6020(b); Andary-Stern v. Commissioner, T.C. Memo. 2002-212, slip op. at 11 (explaining that, in the absence of a taxpayer-filed return, the Commissioner need only "do the best he can with the information available to him").

We also do not consider the validity of the section 6651(a)(3) additions to tax, which are part of the underlying liabilities. See Katz v. Commissioner, 115 T.C. 329, 338-339 (2000). Section 6651(a)(3) imposes an addition to tax in the case of a failure to pay a tax required to be shown on a return, which was not so shown, within 21 days after the date of the IRS' notice and demand letter. Because the IRS first proposed to assess these additions to tax in the levy notice, petitioner did not have a prior opportunity to dispute the additions to tax and was entitled to challenge them during the section 6320/6330 hearing. See Ramdas v. Commissioner, T.C. Memo. 2013-104, at \*39-\*41 (holding that the taxpayer was entitled to challenge a section 6651(a)(3) addition to tax during a section 6330 hearing because the addition to tax did not accrue until after the issuance for the notice of deficiency, assessment, and notice and demand). However, petitioner did not seek administrative review of the additions to tax on its section 6320/6330 hearing request or during the hearing itself, and petitioner did not assign error to

[*19] the additions to tax in the petition. The notice of determination did not address the additions to tax.

Pursuant to section 6330(c)(3) the Appeals Office's determination shall take into consideration issues "raised" by the taxpayer under paragraph (2). "Thus, if an issue is never raised at the hearing, it cannot be a part of the Appeals * * * [Office's] determination." Giamelli v. Commissioner, 129 T.C. at 113. We generally cannot review respondent's determination on the basis of an issue that petitioner did not raise and that the Appeals Office never considered, and we therefore do not disturb the determination on the basis of its nonruling on the section 6651(a)(3) additions to tax. See Magana v. Commissioner, 118 T.C. 488, 493-494 (2002); Ramdas v. Commissioner, at *41; see also Rule 331(b)(4); Funk v. Commissioner, 123 T.C. 213, 218 (2004) (holding that, when a taxpayer fails to assign error in the petition with respect to an addition to tax, the taxpayer is deemed to have conceded that item and the Commissioner has no obligation to produce evidence to support the determination (citing Swain v. Commissioner, 118 T.C. 358 (2002))). But cf. Hoyle v. Commissioner, 131 T.C. 197, 201-203 (2008) (holding that the Court may review the Appeal Office's verification under section 6330(c)(1) without regard to whether the taxpayer raised it at the section 6320/6330 hearing).

**[\*20]** III.   Conclusion

Because petitioner may not challenge the underlying liabilities, we review the Appeals Office's determination for abuse of discretion.  See Sego v. Commissioner, 114 T.C. at 610; Goza v. Commissioner, 114 T.C. at 182.  The record supports a finding that the Appeals Office properly verified that the requirements of applicable law and administrative procedure had been met.  See sec. 6330(c)(3); Wadleigh v. Commissioner, 134 T.C. at 287-288.  Petitioner did not request a collection alternative or file the necessary financial information and past due returns that would have allowed the Appeals Office to consider accepting one.  See sec. 6330(c)(2)(A)(iii).  Although petitioner checked the box for "Lien Withdrawal" on its section 6320/6330 request, it did not present the Appeals Office with any evidence regarding its entitlement to withdrawal of the NFTL filing and therefore did not properly raise the issue before the Appeals Office or this Court.  See Giamelli v. Commissioner, 129 T.C. at 115; Magana v. Commissioner, 118 T.C. at 493-494; sec. 301.6320-1(f)(2), Q&A-F3, Proced. & Admin. Regs.  The Appeals Office properly balanced the need for efficient collection of taxes with petitioner's concerns regarding the intrusiveness of the proposed collection actions.

**[*21]** We have considered the parties' remaining arguments, and to the extent not discussed above, conclude those arguments are irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.